IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02621-DDD

SCHUMÉ NAVARRO,

    Plaintiff,

v.

CHERRY CREEK SCHOOL DISTRICT NO. 5,

    Defendant.

___

### DEFENDANT'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
___

Defendant Cherry Creek School District No. 5 (the "School District"), by and through its undersigned attorneys, hereby responds in accordance with the Court's September 29, 2021 Order (Doc. 7) to Plaintiff's motion for a preliminary injunction, as follows:

### INTRODUCTION

Plaintiff Schumé Navarro, a candidate for the School District Board of Education ("Board"), filed this disability discrimination action because, as stated on a recording she took of herself and published to the public, she "does not want to comply" with face mask mandates during the COVID-19 pandemic, including a Public Health Order ("PHO") that the Tri-County Health Department ("TCHD") issued concerning school settings within the School District. Navarro claims discrimination after the School District rejected her exemption request, which did not comply with the PHO for multiple reasons. She filed an *Emergency Motion for Temporary Restraining Order & Preliminary Injunction* (Doc. 2, the "Motion") requesting the Court direct the School District "to allow her access to and participation in its school board candidate forums

and other events open to the public without requiring her to wear a face covering." The Court declined to issue an *ex parte* temporary restraining order and ordered briefing on the request for a preliminary injunction. Doc. 7. Navarro has been afforded the opportunity to participate remotely in all candidate forums held since September 28, 2021, yet she persists in seeking emergency injunctive relief. Navarro's motion for a preliminary injunction should be denied.

## BACKGROUND

A. The Tri-County Health Department Orders Universal Masking in School Settings to Protect the Public, Particularly Children.

As of October 4, 2021, there have been 698,672 deaths in the United States from the COVID-19 virus. Centers for Disease Control, COVID Data Tracker, at https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last checked Oct. 4, 2021).

On August 31, 2021, the Tri-County Health Department ("TCHD") issued a Public Health Order ("PHO") "requiring facial coverings to be worn by all individuals age 2 years and older in all School" settings in Arapahoe County, Colorado (where the School District is located). Doc. 2-10, p. 1. TCHD issued the PHO in response to "a marked rise" of cases of COVID-19 "among children[1] in TCHD's jurisdiction" due to the extremely contagious Delta variant, and because "scientific evidence shows that the wearing of facial coverings by individuals assists in reducing virus transmission by reducing the spread of respiratory droplets." *Id.*

TCHD further noted that the United States Centers for Disease Control ("CDC") and the Colorado Department of Public Health and Environment likewise "recommend universal indoor

---

[1] COVID-19 vaccines are not yet available for children younger than 12. U.S. Food & Drug Administration, FDA Approves First COVID-19 Vaccine, at https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine (last checked Oct. 3, 2021).

masking" in school settings "in order to prioritize critical in-person learning," with the CDC finding that "adopting universal masking policies can help avert school closures and isolation or quarantine." *Id.*, p. 2.

Not requiring universal masking would "pose considerable risk to individuals, including (1) risk to the health of children, especially those not yet eligible to receive the COVID-19 vaccine, (2) risk of transmission from infected children, staff, or teachers to family and others outside of the Child Care and School Settings, especially for those at higher risk of complications from COVID-19, and (3) risk of interference with in-person learning and other educational activities due to isolation of positive cases and quarantine of children exposed in these situations." *Id.*

TCHD provided two "exemptions" from the PHO: "those under age 2" and

> Individuals who cannot medically tolerate a Face Covering and who have submitted to the School or Child Care Setting a statement provided by a Colorado-licensed medical provider on the provider's letterhead including the following:
>   a. Medical provider's printed name, license number, address, phone number;
>   b. Signature of the medical provider;
>   c. Identification of the medical condition preventing the individual from wearing a mask and any recommended alternative to the mask.

*Id.*, p. 3.

It ordered that "Except for the limited exemptions and exceptions provided above, no facility subject to this Order may allow an individual to enter or remain within their indoor space unless the individual is wearing a Face Covering as required by this Order." *Id.*, p. 4. The School District has complied with the PHO. Ex. A, Affidavit of Jennifer Perry, ¶ 3. Protecting the safety of its students and the community and striving for in-person school are among its highest priorities. *Id.* at ¶ 4.

B. <u>Navarro Attends Board of Education Functions, Resists Wearing a Functioning Mask, and Seeks a Medical Exemption; the School District Denies it as Insufficient.</u>

Navarro, a candidate for a seat on the School District's Board of Education ("Board"), attended a September 10, 2021 work session of the Board. *Id.* at ¶ 5. There, Navarro wore a see-through face covering; security staff repeatedly told her to pull it up to cover her mouth and nose. *Id.* What Navarro wore was not a "Face Covering" as the PHO defined it. *Id.* Navarro had given an interview in May 2021 acknowledging that the masks she wore were a "joke." *Id.* School District Deputy Superintendent Jennifer Perry had previously sent all candidates for the Board, including Navarro, an email outlining mask expectations at the candidate forums. *Id.* After the September 10, 2021 work session, Deputy Superintendent Perry sent Navarro an email including information from TCHD about the PHO and asking her to wear an appropriate face covering in School District buildings. *Id.*; Doc. 2-3, pp. 3-13.

At 2:50 a.m. on September 13, 2021, Navarro responded, indicating "I have a letter that I will bring from my doctor noting my medical exemption from all face coverings." Ex A, ¶ 6; Doc. 2-3, pp. 2-3. Navarro sent the email again at 9:50 a.m. Ex. A, ¶ 6; Doc. 2-3, pp. 1-2. At 11:06 a.m., Deputy Superintendent Perry responded and asked Navarro to submit the documentation the PHO required for an exemption. Ex. A, ¶ 6; Doc. 2-3, p. 1.

At 1:59 p.m., Navarro sent the School District an email claiming to enclose her "Dr.'s letter of exemption." Ex. A, ¶ 7; Doc. 2-2, p. 1. The attachment was not signed by a doctor. Instead, Navarro included a letter from a Licensed Professional Counselor that provided in relevant part:

> I am writing on behalf of my patient Schume Navarro. She cannot medically tolerate a face covering due to a prior suffocation trauma that she has experienced. Based, [sic] on this history, I feel she would need an exemption from having to wear a mask.

4

> I have a Colorado license LPC #2122. The mental health diagnostic code I have in [sic] file on her is 209.28 F43.23.

Ex. A, ¶ 7; Doc. 2-2, p. 4. The letter was not from a "medical provider" as the PHO defined, did not give the name of the medical condition Navarro had, nor did it provide "any recommended alternative to the mask." Ex. A, ¶ 7; Doc. 2-2, p. 4. Navarro also sent a UCHealth "Health Summary" listing various "health issues." Ex. A, ¶ 7; Doc. 2-2, p. 3.

Navarro had posted a video of herself on social media indicating that "my doctors at UCHealth will not give an exemption." Ex. A, ¶ 8, Ex. A-1, Social Media Video. In January 2021, Navarro had also posted on social media a photograph of herself wearing a mask, captioned: "Who's with me on getting patriot fit? I HATE the whole mask thing but I hate the thought of being weak and out of shape at the brink of civil war." Ex. A, ¶ 8, Ex. A-1.1, Social Media Post. These postings made Deputy Superintendent Perry, as part of a team put together to consider the requests, question the information she had received. Ex. A, ¶ 9.

At 3:25 p.m., the School District sent Navarro an email indicating that her "submission is not compliant with the requirements of the Tri-County Health Department public health order for requesting mask exemptions," including that the supporting letter was not issued by a Colorado licensed medical provider as required by the PHO. Ex. A, ¶ 10; Doc. 2-4. The email invited Navarro to provide the information the PHO required. *Id.* That evening, Navarro attended a meeting of the Board, again wearing the see-through mask that she had already been told was insufficient. Ex. A, ¶ 11.

C. Navarro Attends a Board Candidate Forum; Days Later, the School District Receives a Video of Navarro Indicating She Does not Wear a Mask Because She Doesn't "Want to Comply to All of This."

A Board candidate forum was scheduled for 6:30 p.m. the following day, September 14, 2021, in the auditorium at the School District's Overland High School. Ex. A, ¶ 12. Many students were present in the High School's lobby while the audience was filing into the auditorium. *Id.* Navarro attended, attempting to gain entry without a mask. *Id.* She argued with a security guard about the mask requirement and with officials who told her that the see-through mask she wanted to wear was not sufficient. *Id.* Navarro was handed a disposable mask that she was seen wearing at the forum. *Id.* She participated in the forum, but had to be told to pull her mask over her nose. *Id.*

On September 16, 2021, a community member sent the School District a video Navarro had posted where she said: "And I'm sorry. I get that you are offended that I do not wear a mask. I don't wear it because I don't want to comply to [sic] all of this." Ex. A, ¶ 13; Ex. A-2, Second Social Media Video. This made Deputy Superintendent Perry further question the material Navarro had supplied. Ex. A, ¶ 13.

On September 20, 2021, Deputy Superintendent Perry sent an email to all Board candidates indicating that all candidates would be required to adhere to the "mask-wearing guidelines." Ex. A, ¶ 14; Doc. 2-5. Another candidate forum was held on September 21, 2021 at the School District's Eaglecrest High School. Ex. A, ¶ 14. Navarro did not attend. *Id.*

D. Navarro Does not Attend the September 22, 2021 Forum; Arrangements are Made for her to Participate Remotely at the September 28, 2021 Forum, but Navarro does not Participate.

On September 22, 2021, 92 minutes before the candidate forum scheduled that evening at Cherry Creek High School, Navarro's attorney wrote to the School District's general counsel

6

requesting accommodations on Navarro's behalf. Ex. A, ¶ 15. Among other things, he suggested that Navarro be allowed to wear a "semi-porous mask." *Id.* Approximately an hour before the forum began, Navarro's counsel raised the possibility of remote participation. *Id.* Remote participation could not have been arranged with so little notice. *Id.* Navarro was told that the School District would consider her request for accommodation once she provided the information required by the PHO for an exemption. *Id.*; Doc. 2-6. Navarro did not attempt to gain entry to the candidate forum that evening; she passed out campaign literature to those entering the building. Ex. A, ¶ 15.

On September 27, 2021, despite not receiving anything additional from Navarro, the School District offered Navarro the opportunity to participate in the upcoming September 28, 2021 forum remotely. Ex. A, ¶ 16; Exs. A-3 & A-3.1, Teams Meeting Invitations. The School District offered Navarro technical support to do so. Ex. A, ¶ 16; Ex. A-4, Email Offering Technical Support. It set up a monitor on stage on which Navarro would have appeared and been able to communicate with the audience. Ex. A, ¶ 16, Ex. A-5 & A-5.1, Photographs. Navarro nevertheless did not participate in the forum. Ex. A, ¶ 16. Nor did she contact technical support. *Id.*

E. Navarro is Granted the Opportunity to Participate Remotely in all Remaining Candidate Forums.

The School District subsequently informed Navarro that she could participate remotely in all future candidate forums hosted or sponsored by the School District. *Id.* at ¶ 17. Navarro participated remotely in the September 30, 2021 candidate forum at Smoky Hill High School. *Id.*

**STANDARD OF DECISION**

"[A] preliminary injunction is an extraordinary remedy" and "the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation omitted). The movant must meet four prerequisites: (1) a substantial likelihood of prevailing on

the merits; (2) irreparable injury unless injunctive relief is provided; (3) injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *E.g.*, *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

Navarro incorrectly argues that she may only need to prove a reduced burden on the first element. Motion, ¶ 18. Because she asks the Court to direct the School District to perform certain acts, rather than to simply preserve the status quo, she seeks a historically disfavored mandatory injunction. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). This means the burdens she must prove in this situation are more severe, not less. *Id.* Mandatory injunctions "must be more closely scrutinized to assure that the exigencies of this case support the granting of a remedy that is extraordinary even in the normal course." *Id.* "[A] party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* at 976.

## ARGUMENT

### A. Navarro Cannot Make a Strong Showing of Likelihood of Success on the Merits.

Navarro presses claims under Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Colorado Anti-Discrimination Act.[2] Motion, ¶ 20. She concedes that the ADA's standards control all her claims. *See id.* & n. 3.

The relevant ADA provision is 42 U.S.C. § 12132, which provides: "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability,

---

[2] Navarro's claim pursuant to the Colorado Anti-Discrimination Act is subject to immediate dismissal for failure to even allege exhaustion of administrative remedies. *See, e.g., Zapata v. Colo. Christian Univ.*, 2019 WL 1544179, \*\*3-4 (D. Colo. March 15, 2019) (unpublished).

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." For the reasons stated below, Navarro has not shown a likelihood of success on her claim, let alone a strong showing, that would allow the Court to grant a preliminary injunction.

    a. <u>The School District was Required to Conduct an "Individualized Assessment" of Navarro to Determine Whether Accommodation was Possible Without Endangering the Health or Safety of Others Based on "Guidance of Public Health Authorities;" Navarro Discouraged the Process, Resulting in the Conclusion that she was a "Direct Threat" and Therefore not a "Qualified Individual"[3] Entitled to Protection by the ADA.</u>

The Department of Justice ("DOJ") promulgated regulations to implement the nondiscrimination mandate of Title II. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007). Those regulations are entitled to substantial deference. *Marcus v. Kan. Dept. of Rev.*, 170 F.3d 1035, 1307 n. 1 (10th Cir. 1999).

In 1991, the DOJ wrote about the accommodations process public entities must undergo "where questions of safety are involved." 28 C.F.R. App. B to Part 35. It provided that, like a private sector place of public accommodation, public entities are "not required to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of the public accommodation, if that individual poses a direct threat to the health or safety of others." *Id.* It elaborated from there:

> A "direct threat" is a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services. In *School Board of Nassau County v. Arline,* 480 U.S. 273 (1987), the Supreme Court recognized that there is a need to balance the interests of people with disabilities against legitimate concerns for public safety. Although persons with disabilities are generally

---

[3] This section addresses the second question posed by the Court in Doc. 7.

> entitled to the protection of this part, **a person who poses a significant risk to others will not be "qualified," if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate that risk.**
>
> The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an **individualized assessment**, based on reasonable judgment that relies on **current medical evidence** or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. This is the test established by the Supreme Court in *Arline*. **Such an inquiry is essential if the law is to achieve its goal of protecting disabled individuals from discrimination** based on prejudice, stereotypes, or unfounded fear, **while giving appropriate weight to legitimate concerns, such as the need to avoid exposing others to significant health and safety risks.** Making this assessment will not usually require the services of a physician. **Sources for medical knowledge include guidance from public health authorities**, such as the U.S. Public Health Service, the Centers for Disease Control, and the National Institutes of Health, including the National Institute of Mental Health.

*Id.* (emphasis added).

In 2010, the DOJ took this concept further, specifically promulgating "direct threat" regulations applicable to Title II. 28 C.F.R. App. A to Part 35 (comments on the definition of "direct threat" and § 35.139). 28 C.F.R. § 35.139 – Direct Threat currently provides as follows:

> (a) This part does not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others.
>
> (b) In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will

10

>   actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

In the face of a safety issue, only an accommodation that would eliminate significant risk can subject the proponent to qualification under the ADA. *See Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1269-70 (10th Cir. 2015) (employment context). The direct threat analysis can be a "complicated, fact intensive determination," correlating with the DOJ's instruction to rely upon "guidance from public health authorities." *See id.*; 28 C.F.R. App. B to Part 35. Following such guidance is exactly what the School District did in this case.

Community transmission of COVID-19 is high in 49 of the 50 states, including in Colorado. CDC COVID Data Tracker, at https://covid.cdc.gov/covid-data-tracker/#datatracker-home. Mask mandates, as currently employed throughout facilities in the U.S. District Court of Colorado,[4] are implemented because "scientific evidence shows that the wearing of facial coverings by individuals assists in reducing virus transmission by reducing the spread of respiratory droplets." Doc. 2-10, p. 1. They are especially important in the school setting to protect the health of children and prevent interference with in-person learning. *Id.*, p. 2. It follows that when a person wants to enter a school setting without wearing a mask, the safety of everyone there is implicated. 28 C.F.R. App. B to Part 35. Indeed, the local public health authority, following national public health guidance, has essentially determined that not wearing a mask presents such a significant and serious risk of COVID-19 transmission to vulnerable populations that masks must be mandated in school settings. Doc. 2-10.

---

[4] District Court General Order 2021-10.

When Navarro approached the School District about an exemption from the mask requirement, which directly implicated a safety issue, the School District did exactly what 28 C.F.R. § 35.139(b) required it to do under those circumstances: attempt to conduct an "individualized assessment" of Navarro based on current medical knowledge informed by public health authorities to ascertain the risk posed to the School District community and determine whether it could be significantly mitigated. To make that judgment, it relied upon "current medical knowledge," suggested by the Appendix to the Regulation itself to be "guidance from public health authorities:" the PHO. 28 C.F.R. App. B to Part 35.

As instructed by the DOJ, the School District followed the instructions of its "public health authority," TCHD, within the PHO: it asked Navarro to provide: "a statement provided by a Colorado-licensed medical provider on the provider's letterhead including the following: a. Medical provider's printed name, license number, address, phone number; b. Signature of the medical provider; [and] c. Identification of the medical condition preventing the individual from wearing a mask and any recommended alternative to the mask." Doc. 2-10, p. 3; *see* 28 C.F.R. App. B to Part 35.

Discouraging the "individualized assessment" the School District was charged with performing, Navarro provided none of this information. The statement she provided was not from a medical provider as defined by TCHD, it did not list a "medical condition," and—perhaps most importantly for this particular individualized assessment—it did not list "any recommended alternative to the mask." Without any alternatives recommended, the letter Navarro supplied simply asked that she be excused from wearing a mask, which had been deemed a safety risk from the very beginning. The result of the School District's "individualized assessment" required by 28

12

C.F.R. § 35.139(b) could therefore be nothing other than that Navarro would constitute a "direct threat" for whom participation was not required by 29 C.F.R. § 35.139(a). It follows that she is not a "qualified individual" entitled to relief by the ADA and has no likelihood of success on the merits.

      b. The School District did not Discriminate Against Navarro When Requesting Documentation that Complied with the PHO.[5]

Completely ignoring the controlling direct threat analysis discussed above, Navarro asserts she need not have presented any documentation at all in support of her request for accommodation. Motion, ¶¶ 21-24. This is wrong. While the ADA does not require a claimant provide expert evidence of their disability to prove a prima facie case in every instance (such as when it is obvious), it is well known that those to whom the claimant presents a request for accommodation can require documentation as a prerequisite to granting one. *See, e.g., Rhodes v. S. Nazarene Univ.*, 554 F. App'x 685, 690 (10th Cir. 2014) (unpublished) (public accommodation context); *Ware v. Wy. Bd. of Law Examiners*, 973 F. Supp. 1339, 1357 (Title II context; "court cannot find that the Board's action in requesting specific information from the applicant's treating physician regarding accommodation violated the ADA"); *Wells v. Shalala*, 228 F.3d 1137, 1145-46 (10th Cir. 2000) (employment context); *Padilla v. Mnuchin*, 2020 WL 1852431, *12 (D. Colo. Apr. 13, 2020), *aff'd*, 836 F. App'x 674 (10th Cir. 2020) (unpublished) (employment context).

Navarro also asserts that the "medical documentation" she supplied should have been sufficient in any event. This, too, is incorrect. The letter Navarro provided from her counselor did not indicate the "medical condition preventing [her] from wearing a mask." Doc. 2-10, p. 3. The

---

[5] This section addresses the first question posed by the Court in Doc. 7.

letter states that Navarro cannot "medically tolerate a face covering due to a prior suffocation trauma that she has experienced." Doc. 2-2, p. 4. No "medical condition" is identified here.[6] Nor did the letter give "any recommended alternative to the mask" or even state that there was no such alternative. Doc. 2-10, p. 3. Even if this documentation was supplied by a "medical provider," it would not be sufficient, mooting the debate regarding whether a licensed professional counselor can supply sufficient information to support an exemption from a public health measure.

In any event, Navarro's position in that debate is substantially undermined by her own statements. She published a recording of herself indicating that her "doctors at UCHealth," the institution from which she had supplied information about her "health issues," would "not give an exemption." Ex. A, ¶ 8, Ex. A-1. She had published a video of herself indicating that she "does not want to comply" with mask mandates. Ex. A, ¶ 13; Ex. A-2. She made a social media posting indicating that she *could* wear a mask to perform physical exercise in order to prepare for a coming "civil war." Ex. A, ¶ 8. Finally, she stated she was supplying documentation from her "Dr.," yet the statement was not from a doctor. Doc. 2-3, pp. 2-3.

Documentation provided by a person seeking accommodations "may be insufficient where 'other factors indicate that the information provided is not credible or is fraudulent.'" *Turcotta v. Comcast Cable Commc'ns Mgmt., LLC,* 2019 WL 635409, *13 (D. N.H. 2019) (citing EEOC Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (2000), 2000 WL 33407181 at *11). This evidence called Navarro's request for an exemption into obvious question. Asking for information from a medical provider of the sort TCHD suggested to support an exemption was in no way

---

[6] The letter supplies a "mental health diagnostic code," but says no more.

inappropriate, particularly during a generational pandemic and given Navarro's previous statements. *Briggs v. Walker*, 88 F. Supp. 2d 1196, 1205 (D. Kan. 2000), *citing Theriault v. Flynn,* 162 F.3d 50 (1st Cir. 1998) (In another related ADA context, finding that "When the safety of the public at large is implicated, public entities must be permitted some latitude in their judgments that individualized assessments of qualifications are necessary.").

      c. <u>Navarro's Request for Injunctive Relief has been Mooted by the Provision of Remote Participation Opportunities.</u>

Under the ADA, even a qualified individual is not entitled to the accommodation of their choice, but only to a reasonable accommodation. *Brown v. Esper*, 2019 WL 6893019, *5 (D. Colo. Dec. 18, 2019) (unpublished), *citing Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999). Navarro has been afforded the opportunity to participate remotely in all future candidate forums offered or sponsored by the School District, and in fact has done so once already. By doing so, Navarro can participate in the proceedings—answering questions from and communicating with the audience, just as the other candidates do—from a place where she need not wear a mask. To the extent she is entitled to an accommodation at all, Navarro has been reasonably accommodated. Nothing further is required.

This moots her request for a mandatory injunction. *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) ("An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed," and "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

### B. Navarro is Not Facing Irreparable Harm.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation omitted). "[M]erely serious or substantial" harm is not enough. *Id.* Additionally, "the injury complained of" must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id*. Because Navarro has not established irreparable injury, her request for a preliminary injunction should be denied. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) ("[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.").

Especially given that Navarro has been permitted to participate in the remaining candidate forums, Navarro cannot establish she will suffer irreparable harm without an injunction. Just as any other candidate for the Board, Navarro can answer questions from and communicate with audience members at all remaining forums sponsored by the School District. While Navarro is likely to argue that she will somehow be harmed by not participating in person—apparently, unlike other candidates, without a mask—any such harm is unclear and speculative. That will not suffice. *State v. U.S. Envtl. Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) (A speculative or theoretical injury will not suffice to show a significant risk of harm without a grant of preliminary injunction).[7]

### C. Issuing an Injunction Would be Against the Public Interest and Will Cause More Harm to the School District Than Navarro Would Face Without One.

As a threshold matter, "the state's interest in preventing the spread of COVID-19 and protecting individuals' health is substantial." *Miranda v. Alexander*, 2021 WL 4352329, *6 (M.D.

---

[7] Countering any such speculative harm, remote participation arguably gives Navarro an advantage of a different sort—being able to show facial expressions by communicating with potential voters bare-faced.

La. September 24, 2021) (unpublished), (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, --- U.S. ----, 141 S. Ct. 63, 67, 208 L. Ed. 2d 206 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest.")). "Wearing a mask in public places serves that interest." *Id.* "Indeed, at this point in the pandemic, a nearly unanimous consensus of the public health community recommends the use of masks as a means of reducing the spread of the virus and protecting the mask wearer from it." *Id.* (citing the CDC).

To the extent Navarro would suffer any harm as a result of participating in the candidate forums on a remote basis (and the School District asserts she will suffer no harm it all), it is certainly outweighed by the public interest in avoiding community spread of COVID-19 and the need to avoid the potential harm of children becoming ill or having their learning disrupted. *See id.*; *see also Disability Rts. S.C. v. McMaster*, 2021 WL 4444841, at *9 (D. S.C. Sept. 28, 2021) (unpublished) (enjoining enforcement of state law disallowing school districts from mandating masks because it discriminates against children with disabilities; "No one can reasonably argue that it is an undue burden to wear a mask to accommodate a child with disabilities."); *ARC of Iowa v. Reynolds*, 2021 WL 4166728, *13 (S.D. Iowa Sept. 13, 2021) (unpublished) (enjoining enforcement of law prohibiting school mask mandates to ensure that children are not irreparably harmed). The balance of harms does not favor Navarro here.

## CONCLUSION

For these reasons, Navarro's request for a preliminary injunction must be denied, and it is appropriate to do so without a hearing.

RESPECTFULLY SUBMITTED this 4th day of October, 2021.

        SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

        By:  *s/ Michael Brent Case*
           Michael Brent Case
           Holly Ortiz
           Jonathan P. Fero
           1120 Lincoln Street, Suite 1308,
           Denver, CO  80203
           (303) 595-0941
           bcase@semplelaw.com
           hortiz@semplelaw.com
           jfero@semplelaw.com

I hereby certify that the foregoing pleading complies with the type-volume limitation (5,500 words) set forth in Judge Domenico's Practice Standard III(A)(2).

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of October, 2021, a correct copy of the foregoing **DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** was filed via CM/ECF and served on the following:

Daniel E. Burrows
Public Trust Institute
98 Wadsworth Blvd, #127-3071
Lakewood, CO 80226
Attorney for Plaintiff

        By:  *s/ Kathleen Schmidt*