### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02621-DDD

## SCHUMÉ NAVARRO,

Plaintiff,

v.

## CHERRY CREEK SCHOOL DISTRICT NO. 5,

Defendant.

---

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

---

Defendant's response, ECF No. 12, is a collection of cobbled-together post hoc justifications for discriminating against Mrs. Navarro, none of which are credible or even rational. Defendant's argument that Mrs. Navarro is not a "qualified individual with a disability" tries to use broad proclamations of the dangers of COVID to cover over the District's failure—even now—to make an individualized assessment of the evidence about Mrs. Navarro's condition. And the District has still failed to put forth a reasonable defense of its extremely narrow exemption regime. Instead, the District focuses on Mrs. Navarro's political skepticism about how public health authorities have handled the COVID epidemic. But Plaintiff's political beliefs should not distract the Court from the core, unchallenged facts here:

(1) A medical professional has concluded that Defendant has a psychological condition that makes face coverings intolerable.

(2) That professional opinion tracks how Mrs. Navarro has described her symptoms and

is a straightforward and understandable consequence of her documented medical conditions.

(3)    The District already allows others to enter its buildings maskless and has presented no evidence that Mrs. Navarro's presence would add appreciably to whatever risk already exists.

Given these facts, the Court should issue a preliminary injunction that prohibits Defendant from enforcing its mask rules against Mrs. Navarro.

**I.    There Is No Evidence that One More Unmasked Person in District Buildings Would Present a "Direct Threat" to the Health and Safety of Others, and the District Has Refused to Do the Individualized Assessment that Would Be Necessary to Make that Determination as to Mrs. Navarro.**

Defendant's claim that Mrs. Navarro's unmasked participation would be a "direct threat" to others ignores the fact that the "direct threat" assessment requires an *individualized* determination, 28 C.F.R. § 35.139(b) (2020). Defendant's generalized suggestion that masks are good and more people in masks is better, *see* Def.'s Resp. 11–12, dodges any attempt at considering Mrs. Navarro's individual circumstances. If there was evidence that she had recently tested positive for COVID or was otherwise carrying a deadly contagious disease, perhaps the inability to wear a mask would be a direct threat to others. But there is no such evidence here. Nor can anything the District did be reasonably interpreted as an attempt to individually assess Mrs. Navarro. Rather, it applied an irrational, inflexible rule that seems deliberately designed to make it hard for the disabled to obtain mask exemptions. That is precisely the sort of blanket rule that the "direct threat" regulation prohibits. *See also Silverstein v. Sisters of Charity of Leavenworth Health Servs. Corp.*, 614 P.2d 891, 894–95 (Colo. App. 1980) (holding that blanket rule excluding epileptics from positions in hospitals violates Colorado disability law).[1]

---

[1] Defendant is mistaken that the Court should dismiss Mrs. Navarro's state-law claim, Def's

Furthermore, a determination that a person poses a direct threat must be objectively reasonable. *Jarvis v. Potter*, 500 F.3d 1113, 1122 (10th Cir. 2007). But Defendant's position is based on an unreasonable, deliberately narrow exemption regime and its "direct threat" conclusion is not credible given the evidence. Most obviously, Defendant's claim that maskless disabled persons on school grounds constitute a direct threat to others is belied by the fact that, according to news reports,[2] Defendant has granted several exemptions to students and staff already, Carina Julig, *Aurora-Region School Districts Say Mask Exemption Requests Remain Low*, The Sentinel, Sept. 20, 2021, *available at* https://sentinelcolorado.com/orecent-headlines/aurora-region-school-districts-say-mask-exemption-requests-remain-low/ (noting two staff exemptions and "fewer than 10" student exemptions); *see also* Pl.'s Mot, Exs. 8–9, ECF Nos. 2-8–2-9 (photographs of District staff unmasked in school buildings). Those other exemptions seem particularly salient here since the candidate forums to which the District has denied Mrs. Navarro access take place after school hours (when children would generally not be present in large numbers[3]), in a large

---

Resp. 8 n.2. The exhaustion requirement for such claims only applies to actions alleging "discriminatory or unfair practice[s] *prohibited by parts 4 to 7* of [article 34 of the Colorado Revised Statutes]." Colo. Rev. Stat. § 24-34-306(14) (2020) (emphasis added). The discrimination Mrs. Navarro suffered, however, is addressed in part 8. *See* Cmpl. ¶ 30, ECF No. 3 (citing Colo. Rev. Stat. § 24-34-802).

[2] These news reports are not themselves admissible at trial, but their existence suggests that discoverable, admissible information along these lines exists. They therefore help show that Mrs. Navarro will probably prevail at trial.

[3] The relevant public health order was based on "a marked rise in case rates *among children*," Pl.'s Mot., Ex. 10 at 1, ECF No. 2-10 (emphasis added) and worry about "a less safe environment for unvaccinated *children* if universal masking is not implemented," *id.* at 2 (emphasis added).

auditorium where substantial social distancing is possible.[4] Without some individualized explanation of why Mrs. Navarro's situation is different, Defendant's claim that she is a "direct threat" seems more like an after-the-fact position adopted to cover over illegal discrimination.[5]

Nor is it credible that the District needed a note from a doctor, dentist, or clinical psychologist before it could assess whether Defendant was a "direct threat." Insisting on such a narrow range of professionals for this information is irrational and ignores how people receive medical treatment these days. Mrs. Navarro saw a licensed professional counselor (LPC) for her treatment and, as the Court has already noted, "an LPC is a mental health professional licensed by the State of Colorado to provide mental health and psychological evaluation, assessment, diagnosis, and treatment to individuals," Order Regarding Pl.'s Mot. for TRO & Prelim. Inj. 2, ECF No. 7.  Even at UC Health, which Defendant accuses Mrs. Navarro of avoiding as part of a supposed con, *see* Def.'s Resp. 5, 14, Mrs. Navarro sees a nurse practitioner, not a doctor. *See* Messages Between Pl. & Heather Ann Simmons Cody, Sept. 9–14, 2021 (attached as Ex. 14).

Furthermore, even if the District did need information from a doctor, dentist, or clinical psychologist, surely it could have accepted the necessary information from *any* such professional. But the District instead insists on hearing only from a "Colorado-licensed"

---

[4] The video of the first candidate forum shows that even the candidates themselves can be (and are) spaced widely apart. *See* Board of Ed. Forums, Overland High School, https://www.youtube.com/watch?v=Udnd-wbtsoQ.

[5] A similar analysis applies to Defendant's claim that it would damage the public interest to allow Mrs. Navarro to fully participate in candidate forums, Def.'s Resp. 16–17. That claim is not credible given that the District has already allowed students and staff to appear maskless in situations that present a greater risk than a maskless Mrs. Navarro on the stage at a candidate forum would.

provider. This irrational narrowing of the range of acceptable evidence simply confirms that the District was trying to make it hard to obtain an exemption.

Had Defendant really been trying to perform an individualized assessment of Mrs. Navarro's circumstances, it would have considered the information she provided and not simply discounted it out of hand. If the District needed more information to help with a true individualized assessment, it could have contacted Mrs. Navarro's counselor directly—indeed, the letter from her counselor contains the counselor's phone number and invites the District to call "if [it has] any further questions." Pl.'s Mot., Ex. 2 at 4, ECF No. 2-2.

The claim that the letter "did not list a 'medical condition'" is another dodge. Def.'s Resp. 12; *accord id.* at 14. The counselor's letter plainly says that Mrs. Navarro "cannot medically tolerate a face covering *due to a prior suffocation trauma that she has experienced*"—the inescapable implication being that the patient has lingering psychological issues because of that trauma. Pl.'s Mot, Ex. 2 at 4 (emphasis added). And if that wasn't enough, the counselor listed a "mental health diagnostic code" for Mrs. Navarro's condition. *Id.* The District claims ignorance over what this code could mean, but a quick internet search would have shown that it is a common medical billing code referring to an adjustment disorder with mixed anxiety and depressed mood. It is from the *International Classification of Diseases* (10th ed., clinical modification), which is published by a federal government agency. Indeed, the Centers for Disease Control provides an online tool for searching those codes at https://icd10cmtool.cdc.gov/?fy=FY2022. The District could've found a description of the diagnosis simply by entering "F43.23" (the code given by Mrs. Navarro's provider) into the search tool. But the District did not *want* to provide Mrs. Navarro with the rights afforded to her by the ADA. So it instead did everything in its power to nitpick her evidence and arbitrarily declare it unacceptable.

At any rate, the evidence in front of the Court now establishes Mrs. Navarro's

condition. *E.g.*, Simpson Aff. ¶¶ 3–9 (attached as Ex. 11); Navarro Aff. ¶¶ 2–11 (attached as Ex. 12); Cmpl. ¶¶ 1–7, ECF No. 3; Pl.'s Mot., Ex. 2 at 3–4. That is enough to show that Mrs. Navarro is likely to prove both her disability and the need for an accommodation. Therefore, she has established the likelihood of success necessary for a preliminary injunction.

## II.   Mrs. Navarro's Political Positions Do Not Contradict the Credible Medical Opinions and Historical Evidence Showing She Cannot Medically Tolerate Face Coverings.

Defendant also argues that Mrs. Navarro's political opinions regarding government-imposed mask regimes and statements that she does not want to wear a mask somehow invalidate the evidence of her disability. Def.'s Resp. 14. This argument fails for at least two reasons.

First, most of what Defendant points to does not actually contradict Mrs. Navarro's need for an exemption. It is unsurprising that a person with a disability making masks intolerable for her "'does not want to comply' with mask mandates," Def.'s Resp. 14 (quoting Exs. A, A2). Likewise, her inability to get an exemption letter from UC Health rested on a policy decision not to give out letters to anyone, not a reasoned medical opinion that contradicted Mrs. Navarro's counselor. *See* Ex. 14 at 3.

Second, as Mrs. Navarro asserts in her statement, her political positions are based on her belief that "the government should allow people to make the decision that they believe is best for them and their children." Ex. 12 ¶ 13. This has been a constant refrain in Mrs. Navarro's political campaign. *See* Pl.'s Mot., Ex. 1 at 3, ECF No. 2-1. The current District regime plainly disagrees with this message. But that policy dispute is a separate issue from what the ADA requires for Mrs. Navarro's disability. Using broad pronouncements about government policy to reject her request for an exemption based on a documented disability seems more likely to be political persecution than a reasoned

response to the evidence.

Ultimately, Mrs. Navarro's disability is supported by a well-documented history of abuse, *e.g.*, Ex. 11 ¶¶ 3–4, 8; Navarro Letter (attached as Ex. 13). And the supposed discrepancies in Mrs. Navarro's mask-wearing behavior are easily explained as a disabled woman's failed attempts to exist in a society that has mandated near-constant mask wearing for more than a year. *See* Ex. 12 ¶¶ 5–6, 8–11. The District's post-hoc reliance on Mrs. Navarro's political statements (mentioned in the response for the first time) to justify its treatment of her simply does not hold water.

### III.   Mrs. Navarro Is Requesting a Prohibitory Injunction, Not a Mandatory One.

Defendant is also wrong that Mrs. Navarro is requesting a disfavored "mandatory" injunction. A "mandatory" injunction is a term of art, distinguishing injunctions that require a person to do something from those that merely prohibit it from doing something ("prohibitory" injunctions). "There is no doubt that determining whether an injunction is mandatory as opposed to prohibitory can be vexing." *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1006 (10th Cir. 2004) (Seymour, J., concurring in part and dissenting in part).[6]

> In many instances, this distinction is more semantical than substantive. For to order a party to refrain from performing a given act is to limit his ability to perform any alternative act; similarly, an order to perform in a particular manner may be tantamount to a proscription against performing in any other.

*Id.* (internal quotes omitted).

But despite the difficulty, the Court still must sort out which type of injunction would be involved here. Ultimately, this requires the Court to consider whether "the gravamen of the plaintiff's" request "seek[s] to prohibit action on the part of the defendant." *Id.* When a

---

[6] *O Centro Espirita* is a fractured en banc opinion. Plaintiff has endeavored here to cite only portions of the decision that were joined by a majority of the judges.

case involves the government, that determination hinges on whether the requested injunction seeks "to stop the government from enforcing" some rule. *Id.* If so, the requested injunction is prohibitory, not mandatory.

Mrs. Navarro has requested only that she be allowed "access to and participation in . . . school board candidate forums and other events open to the public without requiring her to wear a facial covering." Pl.'s Mot. 1, ECF No. 2. This would not require Defendant to change the forum in any way. Defendant need only forbear enforcement of the facial covering requirement. That's a prohibitory injunction, not a mandatory one. *See O Centro Espirita*, 389 F.3d at 1006 (Seymour, J., concurring in part and dissenting in part).

## IV. The District's Provision of a Remote Attendance Option Does Not Moot Mrs. Navarro's Need for a Preliminary Injunction.

Lastly, the District is wrong that is has solved Mrs. Navarro's problem by providing her the ability to participate via videoconference.

For one thing, ADA plaintiffs need not establish irreparable harm to obtain a preliminary injunction. *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 957 F. Supp. 2d 1272, 1283 (D. Colo. 2013); *Rothberg*, 300 F. Supp. 2d at 1102–03; *accord Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 651 (10th Cir. 2004). *See generally* 42 U.S.C. § 12133 (2018) (providing for injunctive relief in Title II cases). So the half-measure the District has provided with remote attendance does not adequately address the legal issue.

Furthermore, the purpose of the ADA is "to assure equality of opportunity [and] full participation" for disabled persons. 42 U.S.C. § 12101(a); *see also id.* ("[P]hysical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society . . . ."); *Rothberg v. Las Sch. Admission Council, Inc.*, 300 F. Supp. 2d 1093, 1105 (D. Colo. 2004) ("The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and to place those with disabilities on an equal footing with others." (internal quotes

omitted)). As months of experience throughout the COVID pandemic has taught us, videoconferences are an inadequate substitute for in-person interaction.[7] This is especially true in the context of a local-level political campaign, where personal, personalized communication is key to a successful candidacy.

Additionally, remote participation has only been extended to Mrs. Navarro "as a courtesy," not out of obligation. E-mail from Sonja McKenzie to Dan Burrows, Sept. 28, 2021 (attached as Ex. 15). "[V]oluntary cessation of illegal conduct" does not moot a case. *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997). Without injunctive relief, the District could remove the remote option at any time.

Nor could the Court solve this problem by simply requiring Defendant to keep offering a remote attendance option. Such an injunction *would* be a "mandatory" injunction. To stay within the proper exercise of its power, the Court should limit itself to a prohibitory injunction that merely prevents Defendant from enforcing its mask policy against Mrs. Navarro.

WHEREFORE, Mrs. Navarro renews her request that the Court issue a preliminary injunction allowing her to attend the upcoming candidate forums—and other events hosted by Defendant that are open to the public—without wearing a mask.

---

[7] If it were an adequate substitute, one would wonder why the District didn't just host fully online candidate forums in the first place. Or why the response focuses so much on the need for "in-person learning" in its schools. Def.'s Resp. 3, 11.

s/ Daniel E. Burrows
**Daniel E. Burrows**
Public Trust Institute
98 Wadsworth Blvd. #127-3071
Lakewood, CO 80226
Telephone: (720) 588-2008
E-mail: dburrows@publictrustinstitute.org
Attorney for Plaintiff

CERTIFICATION

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ Daniel E. Burrows
**Daniel E. Burrows**
Public Trust Institute